# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PAULINO SOLANO**, | Case No. 3:23-cv-01178-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING DEFAULT JUDGMENT** |
| v. | |
| **JAIME PRECIADO**, | |
| Defendant. | |

Bonnie Allen-Sailer and Corinna R. Spencer-Scheurich, Northwest Workers' Justice Project, 310 SW 4th Ave, Suite 320, Portland, OR 97204. Attorneys for Plaintiff.

**IMMERGUT, District Judge.**

On August 11, 2023, Plaintiff Paulino Solano filed this action against Defendant Jaime Preciado to (1) collect unpaid wages under federal and Oregon law; (2) recover for violations of federal and Oregon law relating to agricultural worker protections; and (3) recover for violations of federal and Oregon law relating to human trafficking. Complaint ("Compl."), ECF 1. After Plaintiff provided documentation showing that he complied with Oregon service of process rules, ECF 13, ECF 15, the clerk entered default against Defendant under Rule 55(a) of the Federal Rules of Civil Procedure on January 30, 2024. ECF 16. Plaintiff now moves for default judgment

PAGE 1 – OPINION AND ORDER GRANTING DEFAULT JUDGMENT

under Rule 55(b)(2). Motion and Memorandum for Entry of Default Judgment ("Mot."), ECF 17.

Plaintiff seeks $108,1057 in damages, *id.* at 1, the noneconomic portion of which is supported by

his Declaration, Declaration of Paulino Solano in Support of Motion for Default Judgment

("Solano Decl."), ECF 20. For the following reasons, Plaintiff's motion is GRANTED.

## LEGAL STANDARDS

Following the clerk's entry of default under Federal Rule of Civil Procedure 55(a), the

general rule is that "the factual allegations of the complaint, except those relating to the amount

of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th

Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The court,

however, does not accept as admitted legal conclusions or facts that are not well-pleaded.

*DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained

in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps

v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572

F.2d 1386, 1388 (9th Cir. 1978)).

After the clerk has entered a defendant's default, the court may enter default judgment

against that party. *See* Fed. R. Civ. P. 55(b)(2). The court's decision whether to enter default

judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth

Circuit has identified seven factors to guide a district court's consideration of whether to enter

default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action[,] (5) the possibility of
> a dispute concerning material facts[,] (6) whether the default was
> due to excusable neglect, and(7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The "starting point," however, "is the general rule that default judgments are ordinarily disfavored." *Id.* at 1472.

When moving for default judgment, a plaintiff must establish the amount of damages by proof, unless the amount is liquidated or otherwise capable of computation. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). Even when the damages are not liquidated or certain, the precise amount can be established by affidavits and without an evidentiary hearing. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *Roadrunner Transp. Servs., Inc. v. Tarwater*, No. SACV 10-1534 AG (MLGx), 2012 WL 12918345, at *9 (C.D. Cal. Aug. 5, 2012).

## BACKGROUND[1]

Plaintiff was employed by Defendant from approximately August 8 to October 28, 2021, to provide labor for Defendant's agricultural processing business located in Clackamas County, Oregon. Compl., ECF 1 ¶¶ 10, 17. Defendant did not have a license to operate a farmworker camp. *Id.* ¶ 37. Throughout his employment, Plaintiff worked long hours in difficult conditions, *id.* ¶¶ 23–28, 40–57, and he received only $800 in wages for almost three months of work, *id.* ¶ 33.

Plaintiff was subjected to harsh conditions and treatment during his employment. Plaintiff worked and lived in "a large store room with no windows," where he was "constantly under guard" and "only allowed . . . to go outside for five minutes at a time." Solano Decl., ECF 20 ¶¶ 6–7; Compl., ECF 1 ¶¶ 44–47. Plaintiff was directed to sleep on the floor of the store room, and he and his fellow workers had access to only two portable bathrooms which were kept in poor and unsanitary conditions. Compl., ECF 1 ¶¶ 40, 42; Solano Decl., ECF 20 ¶¶ 6, 10.

---

[1] As explained in the preceding section, this Court accepts Plaintiff's well-pleaded facts for purposes of his Motion for Default Judgment. This Court will also consider facts attested to by Plaintiff in his sworn Declaration, ECF 20.

Because Plaintiff was "not allowed to leave the property often," he "depended on [his] supervisors to provide [him] with food and water." Solano Decl., ECF 20 ¶ 9; Compl., ECF 1 ¶ 48. "[T]here were days when [he] did not eat at all because there was no food." Solano Decl., ECF 20 ¶ 9; Compl., ECF 1 ¶ 49.

Defendant's employees threatened Plaintiff and his family. Compl., ECF 1 ¶¶ 53–54; Solano Decl., ECF 20 ¶¶ 17, 21. One of Plaintiff's supervisors "carried with him a long gun, like a rifle," and "also had another weapon like a bazooka that he kept nearby." Solano Decl., ECF 20 ¶ 8; Compl., ECF 1 ¶ 45. Plaintiff feared that the supervisors "would carry out their threats to come after [him] or [his] family and hurt or kill [them]." Solano Decl., ECF 20 ¶ 21; Compl., ECF 1 ¶ 54. Plaintiff and the other individuals working for Defendant developed a "plan about what to do if the men in charge hurt any of [them] – some people could warn the families, some people could take videos, some people could try to get a message out." Solano Decl., ECF 20 ¶ 18; Compl., ECF 1 ¶ 55.

Despite being assured repeatedly that he would receive wages for his work, Plaintiff was not paid until late October 2021, almost three months into his employment. Solano Decl., ECF 20 ¶¶ 15, 16, 22, 24; Compl., ECF 1 ¶¶ 59, 61. He received only $800. Solano Decl., ECF 20 ¶¶ 24; Compl., ECF 1 ¶¶ 33, 61. Plaintiff estimates that he worked 1,076 hours for Defendant, 596 of which were overtime. Compl., ECF 1 ¶ 31. He "continued to ask for [his] unpaid wages for many months, without success." Solano Decl., ECF 20 ¶ 24; Compl., ECF 1 ¶¶ 65–66.

During the time he worked for Defendant, Plaintiff "often felt like [he] was going to vomit." Solano Decl., ECF 20 ¶ 18. He lived in fear and struggled to sleep, and he continues to struggle to sleep. Solano Decl., ECF 20 ¶¶ 19–21, 25–26; Compl., ECF 1 ¶ 72.

## DISCUSSION

The following discussion addresses each of the *Eitel* factors, which, as explained below, on the whole weigh in favor of granting default judgment.

**A.  The possibility of prejudice to Plaintiff weighs in favor of default judgment.**

If default judgment were not granted, Plaintiff would be denied a legal remedy against Defendant for Defendant's allegedly unlawful actions, and this denial would be because of Defendant's failure to appear and defend himself. *See PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *J & J Sports Prods., Inc. v. Frei*, No. 4:12-cv-0127-BLW, 2013 WL 3190685, at *1 (D. Idaho June 21, 2013). Plaintiff made a written demand for his unpaid wages and complaining of Defendant's statutory violations in June 2023. *See* Mot., ECF 17 at 14. Plaintiff claims that he has attempted in good faith to resolve this dispute without litigation. Thus, without a default judgment, Plaintiff would be left without a remedy for Defendant's actions. This possibility of prejudice weighs in favor of default judgment.

**B.  The sufficiency of the Complaint and the merits of Plaintiff's substantive claims weigh in favor of default judgment.**

Plaintiff's Complaint sufficiently states a claim for relief, thus meeting the second and third *Eitel* factors. *See Danning*, 572 F.2d at 1388 (stating the second and third factors require a plaintiff's allegation to "state a claim on which the [plaintiff] may recover"). Because the clerk has entered default, the well-pleaded allegations of the complaint are taken as true and are binding against the defaulting party. *Garcia v. Pacwest Contracting LLC*, No. 3:12-CV-01930-SI, 2016 WL 526236, at *1 (D. Or. Feb. 9, 2016) (citing *TeleVideo Systems, Inc.*, 826 F.2d at 917). Thus, the question is whether Plaintiff is entitled to recover on the facts set forth in the Complaint. As explained below, this Court concludes that Plaintiff is so entitled.

In addition, a plaintiff who seeks default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010) (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). Federal Rule of Civil Procedure 55 does not require the court to conduct a hearing on damages, as long as the court ensures that there is an evidentiary basis for the damages awarded in the default judgment order. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters., Inc. v. LMC Int'l, Inc.*, No. 98-CV-0658A(F), 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004). At this Court's request, Plaintiff provided a Declaration attesting to his experiences. ECF 20. This Court finds that Plaintiff's Declaration provides a sufficient evidentiary basis to assess damages; an evidentiary hearing is not necessary.

The following discussion proceeds claim by claim, first addressing the merits of the relevant claim and then Plaintiff's attendant request for damages.

### 1. Wage and Hour Claims

#### a. Merits

Plaintiff alleges that Defendant violated federal and Oregon minimum wage and overtime laws when Defendant failed to pay Plaintiff for each hour of work and an overtime premium for hours worked over 40 in a week. Compl., ECF 1 ¶¶ 73–78. Under the federal law claim, Plaintiff seeks $16,718.50 in unpaid wages and an equal amount in liquidated damages. Mot., ECF 17 at 6–7. Under the Oregon law claim, Plaintiff seeks $3,060 as a penalty for Defendant's failure to pay his wages. *Id.* at 7. Plaintiff also seeks an additional $3,060 as a penalty for Defendant's failure to pay his wages when due after termination. *Id.* at 8–11.

Under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203–19, an employer who violates certain provisions is liable in the amount of the employee's unpaid minimum wages and

unpaid overtime compensation. Based on Plaintiff's well-pleaded allegations, Defendant violated the FLSA. Plaintiff's employment was covered by the FLSA, *see* 29 U.S.C. § 206(a). Plaintiff worked, by his estimate, 1,076 hours, 596 of which would qualify as overtime, but he received only $800, well below the wages he was owed.

Likewise, Plaintiff's well-pleaded allegations establish that Defendant violated Oregon's wage and hour laws. Defendant paid Plaintiff only $800 for Plaintiff's 1,076 hours of work. Thus, Defendant failed to pay Plaintiff minimum wage, and he also failed to pay Plaintiff overtime wages for Plaintiff's overtime work. *See* O.R.S. 653.055. Additionally, Plaintiff's well-pleaded allegations establish that Defendant failed to pay him his wages when due after termination, in violation of O.R.S. 652.140. Under that provision, the employer must provide all wages due promptly upon an employee's termination and in all cases before five days from termination. An employer who fails to comply with either provision is subject to a civil penalty as calculated in O.R.S. 652.150.

### b.  Damages

Plaintiff seeks $16,718.50 in unpaid wages and an equal amount in liquidated damages for his FLSA claim. This Court finds that the wage amount calculated by Plaintiff is correct, and he is entitled to $16,718.50 in actual damages. As for liquidated damages, it is a matter of this Court's discretion whether to award liquidated damages and, if so, in what amount. "[C]ourts need not award liquidated damages in every instance; instead, courts retain discretion to withhold a liquidated damages award, or to award less than the statutory liquidated damages total, where an employer shows that, despite the failure to pay appropriate wages, the employer acted in subjective good faith and had objectively reasonable grounds for believing that the acts or omissions giving rise to the failure did not violate the FLSA." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003) (citations and internal quotation marks omitted), *aff'd*, 546 U.S. 21 (2005).

Because Defendant has failed to appear, this Court has no way of deciding whether he can establish this defense. This Court finds that it is appropriate to award liquidated damages in an amount equal to the unpaid wages, $16,718.50.

For the violations of Oregon law, Plaintiff seeks $3,060 as a penalty for Defendant's failure to pay his wages and $3,060 as a penalty for Defendant's failure to pay his wages when due upon termination. These state law awards raise potential issues of impermissible double recovery, between both (1) the state law award for unpaid wages and the FLSA award and (2) the two state law awards.

Plaintiff argues that recovering under the FLSA and Oregon law does not amount to impermissible double recovery because the statutory schemes serve different policy goals. Mot., ECF 17 at 7–8. The FLSA, according to Plaintiff, is remedial and seeks to make an impacted employee whole. The applicable provision of Oregon's wage and hour law, O.R.S. 653.055, is penal in nature. *See Mathis v. Hous. Auth. of Umatilla Cnty.*, 242 F. Supp. 2d 777, 790 (D. Or. 2002) (explaining that an award of a penalty under a similar Oregon statute "and an award of liquidated damages under the FLSA do not constitute a double recovery"). This Court is persuaded that allowing Plaintiff to recover damages for his unpaid wages and overtime under the FLSA, as well as punitive damages for Defendant's violation of Oregon's wage and hour laws, does not lead to impermissible double recovery.

Plaintiff makes similar arguments to justify awarding penalties for Defendant's failure to pay his wages when due upon termination, in addition to failing to pay minimum and overtime wages. Where two separate statutory schemes provide for two separate remedies, each with its own purpose, an employer who violated both laws is liable for the penalties provided in each. *See Hargrove v. Sykes Enterprises, Inc.*, No. CV 99-110-HA, 2000 WL 1132049, at *3 (D. Or.

PAGE 8 – OPINION AND ORDER GRANTING DEFAULT JUDGMENT

May 23, 2000) ("Relief pursuant to one statute does not preclude relief pursuant to the other."). Separate penalties are thus available for the failure to pay minimum and overtime wages, which "can occur during employment," and for the failure to pay wages due after termination, which "occurs after the employment relationship has ended." *Cornier v. Paul Tulacz, DVM PC*, 176 Or. App. 245, 249 (2001). These penalties "remedy two distinct statutory violations that arise out of different factual contexts and accrue at different times." *Id.* Accordingly, it is appropriate for Plaintiff to recover punitive damages under these two provisions of Oregon law.

Plaintiff is entitled to recover $16,718.50 in unpaid wages and an equal amount in liquidated damages, for a total of $33,437. In addition, Plaintiff is entitled to recover $6,120 in penalties for Defendant's violations of Oregon wage and hour laws.

### 2.  Agricultural Worker Protection Claims

#### a.  Merits

Plaintiff alleges that Defendant violated the Agricultural Worker Protection Act, 29 U.S.C. §§ 1801–72, by failing to provide written employment disclosures in violation of § 1821(a), knowingly misrepresenting employment conditions to Plaintiff in violation of § 1821(f), failing to pay Plaintiff all of his wages when due in violation of § 1822(a), violating the terms of the working arrangement in violation of § 1822(c), and failing to ensure that the housing provided complied with applicable health and safety standards in violation of § 1823(a). Compl., ECF 1 ¶¶ 81–85.

Plaintiff's well-pleaded allegations state a claim for relief as to each of the AWPA violations. Defendant did not provide written employment disclosures. Compl., ECF 1 ¶ 21. The supervisors "promised Plaintiff a piece rate for his work based on pounds of agricultural product processed" and told him he "would be paid weekly." *Id.* ¶ 19. Plaintiff was not compensated according to the terms of this arrangement. *Id.* ¶ 33. And when Plaintiff was compensated, he

PAGE 9 – OPINION AND ORDER GRANTING DEFAULT JUDGMENT

received only $800 for nearly three months of work, which means his wages were not paid when
due. *Id.* ¶¶ 33, 61. Finally, Plaintiff was directed to sleep on the floor of the store room and had
access to only an outdoor shower with cold water and portable bathrooms in poor condition. *Id.*
¶¶ 40–42. Defendant lived on the property where this store room was located, and Defendant
visited Plaintiff's worksite on multiple occasions. *Id.* ¶¶ 58–59. Plaintiff has established that
Defendant controlled the housing at the camp, and that this housing did not comply with
applicable health and safety standards. *See* 20 C.F.R. § 654.404–17; 29 C.F.R. § 1910.142.

Plaintiff also alleges that Defendant violated Oregon's Camp Operator Registration Act
("CORA"), O.R.S. 658.705–850, by failing to comply with applicable building codes and health
and safety laws, operating an unregistered camp, and restraining a person who wished to leave
the camp by force, intimidation, or threat. Compl., ECF 1 ¶¶ 86–89. Liability under CORA is
strict and requires no intent to violate the law. *See* O.R.S. 658.750, 658.715. Under CORA, an
individual may recover the greater of actual damages or $500. O.R.S. 658.805(4). Plaintiff has
established that Defendant violated CORA—Plaintiff has alleged that Defendant operated an
unregistered camp, and Plaintiff has also shown that he was restrained from leaving by
intimidation and threat.

### b.  Damages

Plaintiff seeks $500, the maximum amount of statutory damages, for each of the five
AWPA violations. Mot., ECF 17 at 14. Under the AWPA, an aggrieved person may recover up
to $500 in statutory damages per statutory violation. 29 U.S.C. § 1854(c)(1). "The civil remedy
was provided not only to compensate injuries, but also to promote enforcement of the Act and
deter violations." *Martinez v. Shinn*, 992 F.2d 997, 999 (9th Cir. 1993) (quoting *Six Mexican
Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990)); *see also Torres-Lopez v.
May*, 111 F.3d 633, 639 (9th Cir. 1997). The Ninth Circuit has "refrained from interpreting [the

PAGE 10 – OPINION AND ORDER GRANTING DEFAULT JUDGMENT

AWPA] to permit imposition of a penalty disproportionate to the offense." *Martinez*, 992 F.2d at

999 (internal quotation marks omitted).

In determining whether an award of statutory damages furthers the AWPA's objectives,

courts consider:

> (1) the amount of award to each plaintiff, (2) the total award,
> (3) the nature and persistence of the violations, (4) the extent of the
> defendant's culpability, (5) damage awards in similar cases, (6) the
> substantive or technical nature of the violations, and (7) the
> circumstances of each case.

*Id.* (citing *Six Mexican Workers*, 904 F.2d at 1309). Along with these factors, the AWPA

authorizes courts to "consider whether an attempt was made to resolve the issues in dispute

before the resort to litigation." 29 U.S.C. § 1854(c)(2).

Here, Plaintiff made attempts to resolve the issues before resorting to litigation, to no

avail. The other considerations laid out by the Ninth Circuit likewise militate in favor of

awarding Plaintiff his requested damages. The total requested award for the AWPA violations is

$2,500, a penalty which is not disproportionate to Defendant's offenses. Indeed, those offenses

show an abusive disregard for Plaintiff's rights, continuing for several months. In similar cases,

courts have awarded the maximum statutory damages of $500 for the same statutory violations

alleged by Plaintiff. *See Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578, 634–36 (W.D.

Tex. 1999); *Herrera v. Singh*, 103 F. Supp. 2d 1244, 1247–52 (E.D. Wash. 2000); *Martinez v.

Shinn*, No. C-89-813-JBH, 1991 WL 150184, at *3 (E.D. Wash. July 31, 1991), *aff'd*, 992 F.2d

997 (9th Cir. 1993); *Carlos Humberto Cab Siquic v. Star Forestry, LLC*, No. 3:13CV00043,

2016 WL 1117627, at *5 (W.D. Va. Mar. 17, 2016); *Leach v. Johnston*, 812 F. Supp. 1198, 1211

(M.D. Fla. 1992), *disapproved of on other grounds by Aimable v. Long & Scott Farms*, 20 F.3d

434 (11th Cir. 1994). This Court awards Plaintiff $2,500 for the violations of the AWPA.

For the violation of CORA, Plaintiff seeks the statutory maximum of $500. Mot., ECF 17 at 15. This Court finds it appropriate to award Plaintiff statutory damages in the amount of $500 for Defendant's violation of CORA. This Court further finds that awarding Plaintiff statutory damages for violations of CORA and the AWPA is not impermissible double recovery. Though the statutory schemes share some overlap, there is a meaningful difference between the specific violations of the AWPA Plaintiff has shown—failing to provide written employment disclosures, knowingly misrepresenting employment conditions, failing to pay Plaintiff all of his wages when due, violating the terms of the working arrangement, and failing to ensure that the housing provided complied with applicable health and safety standards—and the violation of CORA Plaintiff has shown—restraining him by force, intimidation, or threat.

Likewise, to the extent there is overlap between the AWPA provision for failure to pay wages when due and the similar provision under Oregon law, this Court finds that the purposes underlying the damages for violations of those provisions are distinct. "Although other courts have stated that the statutory damages [provided for under the AWPA] are punitive in nature, the Ninth Circuit has specifically declined to make that finding." *Doe v. D.M. Camp & Sons*, 624 F. Supp. 2d 1153, 1173 (E.D. Cal. 2008). Instead, statutory damages under the AWPA serve a deterrent effect. Conversely, damages under Oregon's wage and hour laws for failure to pay wages when due are explicitly punitive. O.R.S. 652.150 ("Penalty for failure to pay wages on termination of employment"). This Court finds that recovery under both the AWPA and Oregon law for failure to pay wages when due is permissible.

### 3. Anti-Trafficking Claims

#### a. Merits

Plaintiff alleges that Defendant violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581–97, by knowingly obtaining forced labor or

PAGE 12 – OPINION AND ORDER GRANTING DEFAULT JUDGMENT

benefiting from a venture engaged in force labor, 18 U.S.C. § 1589. Compl., ECF 1 ¶¶ 90–92. Section 1595(a) of the TVPRA permits an individual who suffered a violation of § 1589 to bring a civil action against any person who participated in a venture, knowingly benefited from participating, and either knew or should have known the venture was engaged in conduct that violated the TVPRA. *See also Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022). Plaintiff also brings a claim under Oregon's analogous anti-trafficking laws, O.R.S. 163.266, 30.867. Compl., ECF 1 ¶¶ 93–95.

Plaintiff's well-pleaded allegations state a claim for relief under the TVPRA. Plaintiff was subjected to forced labor while employed by Defendant—Defendant's agents knowingly obtained Plaintiff's labor by means of threats of serious harm as defined by the statute. *See* 18 U.S.C. § 1589(c)(2); *United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011). This all occurred at Defendant's business, which was housed on his property, and was directed by him. Defendant received the financial benefit of Plaintiff's labor, meaning he benefited from his participation in the venture. Defendant knew or should have known of the conduct the venture was engaged in.

Likewise, Plaintiff's well-pleaded allegations state a claim under Oregon's analogous anti-trafficking laws. Under those laws, a person injured by trafficking as defined in O.R.S. 163.266 may bring a civil action for damages. O.R.S. 30.867(1). Here, Defendant's conduct would violate O.R.S. 163.266—Defendant "knowingly benefit[ed] financially or receive[d] something of value from participation in a venture that involves" subjecting another person to involuntary servitude. *See* O.R.S. 163.266(2); O.R.S. 163.263; O.R.S. 163.264.

### b. Damages

For the anti-trafficking claims, Plaintiff seeks $32,800 in compensatory damages and an equivalent award in punitive damages, for a total of $65,600. Mot., ECF 17 at 19–21. Both types

PAGE 13 – OPINION AND ORDER GRANTING DEFAULT JUDGMENT

of damages are permitted under the TVPRA and Oregon's anti-trafficking laws. *See Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1174 (D. Kan. 2018) ("Courts have awarded damages for emotional distress to trafficking victims subjected to forced labor in amounts ranging from $415 to $780 per day [under the TVPRA]." (first citing *Gurung v. Malhotra*, 851 F. Supp. 2d 583 (S.D.N.Y. 2012); then citing *Shukla v. Sharma*, No. 07-CV-2972 CBA CLP, 2012 WL 481796, at *13 (E.D.N.Y. Feb. 14, 2012); and then citing *Doe v. Howard*, No. 1:11-CV-1105, 2012 WL 3834867, at *2 (E.D. Va. Sept. 4, 2012)); O.R.S. 30.867. Plaintiff does not seek double recovery—he may recover the amount he seeks under either federal or state law.

For compensatory damages, Plaintiff argues that he is entitled to recover compensatory damages for his suffering relating to the work and living conditions imposed on him. Mot., ECF 17 at 19. He requests an award of $400 per day and points this Court to "similar cases dealing with victims of forced labor," in which courts awarded plaintiffs from $400 to $500 per day for damages resulting from emotional distress. *Id.* at 19–20. (first citing *United States ex rel. Lesnik v. Eisenmann SE*, No. 16-CV-01120-LHK, 2021 WL 4267904, at *17 (N.D. Cal. Sept. 19, 2021), *on reconsideration in part sub nom. Lesnik v. Eisenmann SE*, No. 16-CV-01120-BLF, 2023 WL 3740318 (N.D. Cal. May 30, 2023); then citing *Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, No. 1:18-CV-00030, 2021 WL 2065398, at *9–10 (D. N. Mar. I. May 24, 2021); then citing *Alabado v. French Concepts, Inc.*, No. CV 15-2830 FMO (AJWx), 2016 WL 5929247, at *13 (C.D. Cal. May 2, 2016); then citing *Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 531–32 (D. Md. 2016); then citing *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 458 (E.D. Va. 2015); then citing *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 25 (D.D.C. 2013); and then citing *Doe*, 2012 WL 3834867, at *4). Plaintiff contends that, like plaintiffs in similar cases, he "worked long hours without pay and experienced credible threats of physical harm to himself

and his family, severely restricted movement and access to food and water, supervision by individuals with guns and other weapons, and desperately inadequate housing conditions." Mot., ECF 17 at 20.

Considering the awards courts have deemed appropriate in similar cases, this Court finds that $400 per day is appropriate under the circumstances here. Plaintiff is entitled to $32,800 in compensatory damages.

Plaintiff also requests an award of punitive damages equal to the award of compensatory damages. Mot., ECF 17 at 20–21. The Ninth Circuit has recognized that punitive damages are "generally appropriate" under the TVPRA's civil remedy provision. *See Ditullio v. Boehm*, 662 F.3d 1091, 1094, 1098 (9th Cir. 2011) ("We hold that the TVPA permits recovery of punitive damages because it creates a cause of action that sounds in tort and punitive damages are available in tort actions under the common law."). Courts routinely award punitive damages at a 1:1 ratio to compensatory damages for forced labor claims under the TVPRA. *See, e.g.*, *Wang*, 2021 WL 2065398, at \*16 (awarding punitive damages at a 1:1 ratio with compensatory damages) (collecting cases); *Alabado*, 2016 WL 5929247, at \*14 (awarding punitive damages at a 1:1 ratio with compensatory damages).

The Supreme Court has identified three factors to guide the reasonableness of punitive damage awards: (1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). Of these three factors, the first factor regarding the degree of reprehensibility of the defendant's conduct is "the most important indicium of the reasonableness." *Id.*

PAGE 15 – OPINION AND ORDER GRANTING DEFAULT JUDGMENT

Considering Defendant's conduct here in light of these three factors, this Court finds that a 1:1 ratio is reasonable and will deter Defendant from committing or benefiting from TVPRA violations in the future. Plaintiff is entitled to $32,800 in punitive damages.

**C. The sum of money at stake in the action weighs in favor of granting default judgment.**

"One of the factors the court is free to consider in exercising its discretion to grant or deny default judgment is the sum of money at stake." *J & J Sports Prods., Inc. v. Rafael*, No. CIV S-10-1046 LKK GGH, 2011 WL 445803, at *2 (E.D. Cal. Feb 8, 2011). Under this factor, a court considers the sum of money "in relation to the seriousness of [the defendant's] conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. Here, Plaintiff claims that Defendant forced him to perform unpaid labor under threat of violence and in unsanitary conditions for nearly three months. Plaintiff requests a total judgment of $108,157, which is proportionate considering the seriousness of Defendant's conduct. This sum of money, combined with the prejudice discussed in the first factor, weigh in favor of granting default judgment.

**D. The possibility of a dispute concerning material facts weighs in favor of granting default judgment.**

As discussed above, Defendant has been properly served but has not appeared in this case. Without an appearance by Defendant and his version of the facts, or any other countervailing evidence, and because all well-pleaded allegations are deemed true after entry of default, "no likelihood that any genuine issue of material fact exists" after default has been entered. *Elektra Ent. Grp. Inc v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005); *see also Joe Hand Prods. v. Holmes*, No. 2:12-CV-00535-SU, 2015 WL 5144297, at *7 (D. Or. Aug. 31, 2015). This factor weighs in favor of granting default judgment.

**E. No evidence suggests default was due to excusable neglect; this factor weighs in favor of granting default judgment.**

No evidence suggests that Defendant's failure to respond to the Complaint was due to excusable neglect. Plaintiff provided sworn proof of service of process, ECF 5, and this Court required Plaintiff to provide additional proof of attempts to serve Defendant that satisfied Oregon law, ECF 8. Plaintiff did so. ECF 15. Despite this, Defendant has not appeared in this case or otherwise indicated that he will do so. This factor weighs in favor of granting default judgment.

**F. Policy favors a decision on the merits of the case; this factor weighs against default judgment.**

The single factor that weighs against default judgment here is the strong policy favoring decisions on the merits. But this factor, without more, cannot preclude default judgment. "Although cases should be decided upon their merits whenever reasonably possible, the mere existence of [Rule] 55(b) indicates that this preference, standing alone, is not dispositive." *Garcia*, 2016 WL 526236, at *4 (internal quotation marks omitted) (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177). Here, Defendant's "failure to defend against [Plaintiff's] claims makes a decision on the merits impossible. Accordingly, the policy favoring decision on the merits does not preclude the Court from entering default judgment against [Defendant]." *Id.*

## CONCLUSION

Plaintiff's Motion for Default Judgment, ECF 17, is GRANTED. Plaintiff is entitled to an award of $108,157.

**IT IS SO ORDERED.**

DATED this 28th day of June, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 17 – OPINION AND ORDER GRANTING DEFAULT JUDGMENT